**APPALACHIAN LAND COMPANY, Plaintiff–Appellant,**

v.

**EQT PRODUCTION COMPANY, Defendant–Appellee.**

No. 12–5589.

United States Court of Appeals, Sixth Circuit.

Oct. 27, 2015.

BEFORE: DAUGHTREY, MOORE, and STRANCH, Circuit Judges.

PER CURIAM.

In this diversity-jurisdiction case, we certified a question of Kentucky law to the Kentucky Supreme Court, after concluding that it was "determinative of the cause then pending before the originating court and as to which it appears . . . that there is no controlling precedent in the decisions of the Supreme Court and the Court of Appeals of [Kentucky]." Ky. R. Civ. P. (CR) 76.37(1). The Kentucky Supreme Court graciously accepted certification and has provided us with an interpretation of a state tax statute that resolves the dispositive issue in this case. See Appalachian Land Co. v. EQT Prod. Co., 468 S.W.3d 841, No. 2013–SC–000598–CL, 2015 WL 4972511 (Ky. Aug. 20, 2015) (construing Section 143A.020(1) of the Kentucky Revised Statutes, under which the Commonwealth levies a severance tax on the gross value of natural resources that are extracted or processed within Kentucky).

The dispute concerns whether, under Kentucky's "at-the-well" rule, defendant EQT Production Company, a natural gasprocessor, could deduct the amount of the severance tax it paid on natural gas extracted under a lease with Appalachian Land Company when calculating the royalties owed to Appalachian. Because natural gas is not typically sold at the wellhead, an extractor such as EQT incurs certain post-production costs prior to the sale of the gas at a site away from the well itself, for collection, processing, and transmission to the point of sale. See Poplar Creek Dev. Co. v. Chesapeake Appalachia, LLC, 636 F.3d 235, 238–39 (6th Cir.2011). Because these costs increase the value of the product at the time it is sold, they are deducted from the final sales price before calculating the royalties payable to the

lessor based on the market price of gas at the well. See id.

In this case, EQT also deducted the full amount of the severance tax paid pursuant to Section 143A.020(1). That tax is levied "[f]or the privilege of severing or processing natural resources . . . at the rate of four and one-half percent (4.5%) on natural gas . . ., such rates to apply to the gross value of the natural resource severed or processed . . . ." Ky.Rev.Stat. § 143A.020(1). The "gross value of natural resources severed or processed" is further defined by statute as "the amount received or receivable by the taxpayer" or "the fair market value for that grade and quality of the natural resource." Ky.Rev.Stat. § 143A.010(5)(a) and (b).

Appalachian sued EQT, claiming that EQT's deduction was improper because it resulted in an underpayment of royalties. Appalachian argued in the district court that the royalty payments due under the lease "at the rate of one-eighth (1/8) of the market price of gas at the well" should have been based upon the value of the gas after deducting the post-production costs but without deducting the severance taxes paid pursuant to Section 143A.020(1).

The district court disagreed and entered judgment on the pleadings in favor of EQT. On appeal, we determined that the issue was an unresolved matter of Kentucky state law that was better left to the judgment of the state courts. In the absence of clear guidance from the Kentucky courts, we certified the following question:

Does Kentucky's "at-the-well" rule allow a natural-gas processor to deduct all severance taxes paid at market prior to calculating a contractual royalty payment based on "the market price of gas at the well," or does the resource's at-the-well price include a proportionate share of the severance taxes owed such that a processor may deduct only that

portion of the severance taxes attributable to the gathering, compression, and treatment of the resource prior to calculating the appropriate royalty payment?

*Appalachian Land Co.* 468 S.W.3d at 842–43, 2015 WL 4972511 at *1.

The Kentucky Supreme Court reformulated the dispositive issue and held that "the producer severing natural gas from the earth [here, EQT] is *solely* responsible for the payment of the severance tax" due under Section 143A.020(1). *Id.* (emphasis added). In reaching this conclusion, the court first noted that:

> This tax applies to "all taxpayers severing and/or processing natural resources in this state...." KRS 143A.020(2). "Severing" is defined as "the physical removal of the natural resource from the earth or waters of this state by any means." KRS 143A.010(3). "'Processing' includes but is not limited to breaking, crushing, cleaning, drying, sizing, or loading or unloading for any purpose." KRS 143A.010(6).

*Id.* at 843, 2015 WL 4972511 at *2. The Kentucky Supreme Court then observed that Appalachian was "not engaged in the business of *producing* natural gas" and that EQT was "the only party to the lease that engage[d] in *severing* the gas" and also "the only party to the lease involved in bringing the gas to market and, thus, *processing* the gas." *Id.* at 841, 2015 WL 4972511 at *3. Finally, the court said:

> [I]t is critical to our analysis that the natural gas tax is assessed for the "*privilege* of severing or processing" the gas. This is a privilege [Appalachian's predecessor] surrendered over seventy years ago. Absent a clear legislative directive to the contrary, the *privilege* to deplete this non-renewable resource and bring it to market is most logically bestowed upon the producer—not the passive lessor from whose land the resource is being severed.

*Id.* As a result, the court held, "royalty owners are not statutorily liable for the severance tax assessed under KRS Chapter 143A," and "absent a specific contractual provision apportioning severance taxes, lessees may not deduct severance taxes or any portion thereof prior to calculating a royalty value." *Id.* at 848, 2015 WL 4972511 at *7.

In view of this decision by the Kentucky Supreme Court, we must REVERSE the judgment of the district court in EQT's favor and REMAND the case for further proceedings consistent with the state court's holding.